IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ROBERT JAMES TOWNSEND, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 4:16-CV-301 |
| : | |
| BP EXPLORATION & PRODUCTION : | |
| INC., et al., : | |
| : | |
| Defendants. : | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants BP Exploration & Production Inc. and BP America Production Company ("BP") hereby submit this brief in support of their motion for summary judgment. Plaintiff Robert James Townsend has failed to offer the requisite expert evidence to support any of his claims against BP. In particular, Mr. Townsend cannot establish causation with respect to any of his alleged physical injuries as a result of exposure to oil and/or chemical dispersants during clean-up activities following the April 2010 *Deepwater Horizon* incident. There is no issue of fact, and BP is entitled to a summary judgment in its favor as a matter of law.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

***Deepwater Horizon* Medical Benefits Class Action Settlement**

1. This action arises from the *Deepwater Horizon* oil spill in April 2010. Complaint at p. 1 (doc 1).

2.      On January 11, 2013, the United States District Court for the Eastern District of Louisiana approved a Medical Benefits Class Action Settlement Agreement ("MSA"), which provides a carefully-crafted and comprehensive scheme to compensate and facilitate medical care for class members affected by the spill and subsequent clean-up efforts.[1]

3.      Pursuant to the MSA, class members also have a remedy under the "Back-End Litigation Option" (BELO) process to seek compensation against BP for "Later-Manifested Physical Conditions" (LMPC). Ex. A.[2] The MSA defines an LMPC as "a physical condition that is first diagnosed . . . after April 16, 2012, and which is claimed to have resulted from . . . exposure to oil, other hydrocarbons . . . dispersants and/or decontaminants" used in connection with response activities.[3] Ex. A at pp. 17-18.[4]

4.      The MSA provides that class members, like Mr. Townsend, may seek compensation against BP for an LMPC by filing a BELO lawsuit in the United States District Court for the Eastern District of Louisiana. Ex. A at pp. 63-64. Here, Plaintiff filed his BELO lawsuit on October 5, 2015, and alleges that he was

---

[1] *See* Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement, Rec. Doc. 8217, at 90–91.
[2] The exhibits refer to BP's evidentiary submission in support of motion for summary judgment.
[3] MSA § II.VV.

diagnosed with certain LMPCs as a result of performing clean-up work during the spill response. Complaint at p. 3 (doc. 1). Under the BELO, Mr. Townsend must prove his LMPCs were *legally caused* by spill exposure.[5]

**Claims Allowed in This and Other BELO Actions**

    5.    The MSA limits the issues that may be litigated in a BELO lawsuit.[6] *Id*. at pp. 66-70.  The following issues need *not* be proven and *may not* be litigated:

    a.    The fact or existence of the MSA or any other settlement to prove liability or the amount of the class member's claim;

    b.    The alleged fault of BP for the *Deepwater Horizon* incident; and

    c.    Exposure of the class member to oil, other hydrocarbons, dispersants, and other substances released due to the spill or response activities. *Id*. at p. 68.

    6.    The following issues *are disputed* and *may be litigated* in a BELO lawsuit:

    a.    The fact of diagnosis (and whether the diagnosis was correct);

---

[4] Page references are to the page designations given in the original document at the bottom of each page, not to the numbering added later by the electronic filing system that appear in the header of the page.

[5] MSA § VIII.G.3(a)(iv).

[6] The list of BELO issues is paraphrased for convenience and is not intended to alter the definitive description found in the MSA. The MSA, as amended, is Ex. A to BP's Evidentiary Submission in Support of Motion for Summary Judgment

    b.    The amount and location of oil, other hydrocarbons, dispersants, and other substances, and the timing thereof;

    c.    The level and duration of the plaintiff's exposure to oil, other hydrocarbons, dispersants, and other substances, and the timing thereof;

    d.    Whether the alleged injury was legally caused by the plaintiff's exposure to oil, other hydrocarbons, dispersants, and other substances;

    e.    Whether there exist alternative causes for the plaintiff's alleged injuries; and

    f.    The amount of compensatory damages, if any. (A BELO plaintiff may not seek punitive or other non-compensatory damages.) *Id*. at pp. 66-67.

**Plaintiff's BELO Claims**

7.    On October 5, 2015, Mr. Townsend filed this BELO lawsuit in the Eastern District of Louisiana. (doc. 1). Granting BP's motion to transfer venue (doc. 9), that court transferred this case to the Northern District of Alabama on February 19, 2016. (doc. 10).

8.    Mr. Townsend contends that as a result of exposure to crude oil and dispersants while performing clean-up work in August and September 2010, he

---

and also is available at *In re Deepwater Horizon*, 2:10-md-02179-CJB-SS, Doc.

developed and was first diagnosed with the following physical conditions: "chronic back pain, pain in stomach, swollen lymph nodes, sinusitis, headaches, dizziness, severe seasickness, high blood pressure, and kidney pain."[7] Complaint at p. 2, ¶ 1 (doc. 1); Doc. 40 at p. 16.

9. By Order dated September 7, 2016 (doc. 37), this Court set a deadline for plaintiff's disclosure of expert testimony according to Fed. R. Civ. P. 26(a)(2) of March 15, 2017. BP's expert disclosures are due on or before June 2, 2017. (doc. 37).

10. Mr. Townsend filed a purported disclosure of expert witnesses on February 6, 2017, (doc. 40), containing essentially a list of medical facilities and

---

6427-1 (E.D. La.).

[7] Plaintiff's complaint purports to bring claims relating to *nine* alleged LMPCs, of which only *three* were deemed to meet the claim submission requirements under the MSA by the Medical Claims Administrator – **shortness of breath**, **abdominal pain** and **lymph gland enlargement**. Ex. B, September 23, 2015, letter from Medical Claims Administrator (as revised and reissued by on or around March 8, 2017). Claims for the other alleged conditions were not approved by the Claims Administrator, and therefore, cannot be asserted in this BELO lawsuit. Ex. A at p. 65, Section VIII, G.2(a). Since Plaintiff has not offered the requisite expert evidence supporting general or specific causation for *any* of his claimed conditions, BP has directed its summary judgment motion to all of the medical findings alleged in the complaint. Further, BP contends that none of the nine conditions asserted by Mr. Townsend meets the definition of an LMPC under the MSA. Rather, they are simply signs and symptoms noted by the medical provider and not actual "diagnosed" conditions as required by the express terms of the MSA. As such, BP expressly reserves all of its right to dispute same for purposes of this motion and at a later date if the motion is denied. BP does not waive any of its defenses and objections to Mr. Townsend's defective and deficient BELO claim under the MSA.

individual physicians only.

11. On February 8, 2017, counsel for BP requested that Plaintiff, in accordance with Federal Rule of Civil Procedure 26(a)(2)(C), provide (1) the subject matter on which each witness is expected to present evidence, and (2) a summary of the facts and opinions to which each witness is expected to testify. *See* Ex. C. BP's counsel repeated its request for supplementation on February 24, 2017. *See* Ex. D.

12. Mr. Townsend provided a "Further Disclosure" on March 6, 2017, (doc. 43), which again failed to provide a summary of the facts and opinions to which each expert is expected to testify. Nothing in Mr. Townsend's initial or subsequent disclosure indicates that any expert will offer any opinions regarding general or specific causation for his alleged injuries, as is required in a toxic tort case.

13. At BP's request, Mr. Townsend's medical records were reviewed and analyzed by Dr. Brian Forrester, a medical doctor, who is board certified in occupational medicine. *See* Ex. E at ¶ 1.

14. Based on Dr. Forrester's review and analysis, of the nine medical findings that Mr. Townsend contends he suffered because of exposure to oil and/or dispersants, only five are referenced in his medical records: (i) sinusitis, (ii) back pain, (iii) high blood pressure, (iv) seasickness and (v) lymph gland enlargement..

*Id.* at ¶ 3. None of Mr. Townsend's medical providers found that any of these signs and symptoms (or the others alleged) were caused by his exposure to oil or dispersants while working on the spill clean-up. *Id.* To the extent there is evidence that Mr. Townsend actually suffered from the conditions alleged, all are readily attributable to other causes. *Id.* at ¶ 9.

14.    Mr. Townsend complained of sinusitis on July 6, 2014 – four years after he worked on the spill clean-up. *Id.* at ¶ 4. He was diagnosed with an upper respiratory infection and treated with antibiotics, which indicates that his sinus condition was due to a virus or bacterial infection, not as a result of chemical exposure some years before. *Id.*

15.    While Mr. Townsend complained of back pain in June and July 2014 – again, four years after he worked on the clean-up – none of his medical providers found a causal relationship between his back pain and exposure to oil or dispersants. *Id.* at ¶ 5. Moreover, Mr. Townsend's spinal x-ray taken in 2010 was normal, and his spinal x-rays taken in October and December 2011 showed no significant findings. *Id.* His medical records do not offer any objective evidence supporting any back condition other than Mr. Townsend's subjective complaints. *Id.*

16.    Mr. Townsend's high blood pressure is a common medical condition in the general population, usually multifactorial in origin depending on genetics,

diet, weight gain, age, tobacco use, etc. *Id*. at ¶ 6. Mr. Townsend has a history of tobacco abuse, smoking up to one and a half packs per day, which is a significant risk factor for high blood pressure. *Id*. His early middle age also is typical for onset of high blood pressure among the male population. *Id*. None of Mr. Townsend's doctors make any finding that his high blood pressure was caused by exposure to oil or dispersants. *Id*.

17.     Seasickness is another common medical condition. While Mr. Townsend made subjective complaints of seasickness, no medical provider found seasickness to be caused by exposure oil or chemical dispersants. *Id*. at ¶ 7.

18.     Finally, while Mr. Townsend references lymph node enlargement as a medical condition caused by exposure to oil or dispersants, there are no medical records documenting the presence of lymph node enlargement. *Id*. at ¶ 8. Lymph node enlargement is a non-specific finding typically associated with infectious disease etiologies, and it is not diagnostic of any health effect related to chemical exposure. *Id*.

## **GROUNDS FOR SUMMARY JUDGMENT**

**I.      Plaintiff's Claims Fail as a Matter of Law Because They Are Unsupported by Any Expert Evidence Regarding Causation.**

In his expert disclosure, Mr. Townsend identified a "pre-employment merchant marine physical" to show the state of his health prior to peforming any clean-up work. He identified a manager and a payroll administrator for his former

employer, whom Mr. Townsend stated would testify that he worked around crude oil and provide his rate of pay. Mr. Townsend also identified four medical care facilities and one individual medical provider, contending that associated medical records prove he had symptoms of exposure.

Mr. Townsend has failed to provide a summary of the facts and opinions on which each purported expert is expected to testify according to Federal Rule of Civil Procedure 26(a)(2)(C). Leaving aside his failure to make the disclosure required by the rule, what Mr. Townsend has offered does not amount to competent expert evidence supporting causation. All Mr. Townsend has suggested is that medical records show that he *complained of* certain newly manifested conditions following his work cleaning up the spill. This does not satisfy his burden in a toxic tort case.

A review of the records relied upon by Mr. Townsend shows that none of his medical providers attributed any of his alleged subjective findings to his participation in response activities. There is no evidence supporting causation, and summary judgment should be entered in BP's favor as a matter of law.

> **A.   Causation Analysis for Toxic Tort Claims**

The Eleventh Circuit has recognized that "[t]oxic tort cases . . . are won or lost on the strength of the scientific evidence presented to prove causation." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005) (quoting *Rider v. Sandoz*

*Pharmaceuticals Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002)). For chemicals or substances about which the scientific community does not generally recognize toxicity, the plaintiff must produce competent evidence of general causation. *Hendrix v. Evenflo Co.*, 609 F. 3d 1183, 1196 (11th Cir. 2010). In addition, a toxic tort plaintiff must always prove specific, or individual, causation. *See McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005).

General causation is concerned with whether an agent increases the incidence of disease in a group, not necessarily whether the agent caused any individual disease. *Id.* Epidemiology, a field which concerns itself with finding the causal nexus between external factors and disease, is generally considered to be the best evidence of general causation. *Hendrix,* 609 F.3d at 1183 (quoting *Norris v. Baxter Healthcare Corp.*, 397 F.3d. 878, 882 (10th Cir. 2005) ("[E]pidemiology is the best evidence of general causation in a toxic tort case.")).

Specific, or individual, causation is concerned with whether exposure to an agent was responsible for a given individual's disease. *Benkwith v. Matrixx Initiatives, Inc.*, 467 F.Supp. 1316, 1331 (M.D. Ala. 2006). Specific causation typically deals with questions of whether plaintiff was exposed to the toxin, whether plaintiff was exposed to enough of the toxin to cause the alleged injury, and whether the toxin did in fact cause the injury. *McClain*, 401 F.3d at 1239. In the specific causation analysis, the dose-response relationship often is a significant

factor. *Id*. at 1242 ("[w]hen analyzing an expert's methodology in toxic tort cases, the court should pay careful attention to the expert's testimony about the dose-response relationship."). Dose-response refers to "[a] relationship in which a change in the amount, intensity, or duration of exposure to an agent is associated with a change – either an increase or a decrease – in risk of disease." *Id*.

Taking into account these concepts of general and specific causation, the Eleventh Circuit has set out four criteria that a plaintiff must establish through expert testimony in order to prove causation between a chemical exposure and a particular illness in an individual:  (1) the toxic substance in question must have been demonstrated to cause the type of illness or disease in question (general causation), (2) the individual must have been exposed to a sufficient amount of the substance in question to elicit the health effect in question (specific causation), (3) the chronological relationship between exposure and effect must be biologically plausible, and (4) the likelihood that the chemical caused the disease or illness in an individual should be considered in the context of other known causes. *Id*. at 1242-1243.

### B. Plaintiff Has Failed to Satisfy Any of the Criteria Required to Prove Causation.

Mr. Townsend has offered no scientific evidence supporting the criteria that must be shown to establish causation between an exposure and any alleged injury or condition. Mr. Townsend has not produced any evidence, epidemiologic or

otherwise, that exposure to oil or any as yet unidentified oil or chemical dispersant caused any of his alleged conditions. *See Hendrix,* 609 F. 3d at 1195 ("the expert must compile a 'comprehensive list of hypotheses that might explain the salient clinical findings under consideration … . The issue at this point in the process is which of the competing causes are *generally* capable of causing the patient's symptoms'"), quoting *McClain*, 401 F. 3d at 1253.

    Even assuming that Mr. Townsend had presented sufficient evidence regarding general causation, it is undisputed that he has not produced any evidence regarding specific causation, including (a) competent evidence of the dose of any oil or dispersant in liquid or vapor to which he claims exposure and (b) competent evidence suggesting that this exposure was sufficient to cause his alleged injury. *See id.* ("Second, the expert must eliminate all causes but one.")

    As a matter of fact, a review of the medical records relied upon by Mr. Townsend shows that no medical provider found any association between his alleged health conditions and exposure to oil or dispersants.[8] Of the nine conditions asserted, only five of them are even referenced in his medical records (sinusitis, back pain, high blood pressure, seasickness and lymph gland enlargement). For these five signs and symptoms, none of Mr. Townsend's medical providers found

---

[8] Nor has Mr. Townsend provided anything suggesting that any of his medical providers are willing to provide expert testimony to support his claims against BP.

that any of them was caused by his exposure to oil or dispersants. On the contrary, the undisputed evidence is that all are common to the general population and readily attributable to other causes. *See* Ex. E.

Likewise, Mr. Townsend has offered no scientific evidence to suggest that a causal relationship between his approved LMPCs and his alleged exposure is biologically plausible, *see McClain*, 401 F. 3d at 1253, nor has Mr. Townsend made showing of the likelihood that his alleged exposure to oil or dispersants – instead of other known potential causes – proximately caused any of the conditions about which he complains, *see Hendrix*, 609 F. 3d at 1195.

BP is entitled to a summary judgment because of Mr. Townsend's lack of supporting expert evidence of causation. This conclusion is plainly warranted and fully consistent with how the courts of this circuit have applied the law in this area. For example, in *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005), plaintiffs brought claims against a chemical manufacturer alleging they became ill following exposure to a virulent pesticide used to eradicate fruit flies. *Id*. at 1288. Plaintiffs offered a Ph. D. chemical engineer who had previously worked with pesticides to act as an expert as to causation. *Id*. at 1290. Plaintiffs' expert submitted reports including temperature calculations for conditions of storage of the product at issue, which he said led to the release of harmful toxins. *Id*.

Following a five-day *Daubert* hearing, the district court determined that

plaintiffs' chemical engineer expert's methodology was flawed and contained analytical gaps that could not be reconciled. *Id*. The district court excluded the expert, as well as the plaintiffs' toxicologists and physicians who had relied on his flawed findings, and entered summary judgment in favor of the defendant pesticide manufacturer due to lack of proof of causation. *Id.* at 1294.

On appeal, the Eleventh Circuit upheld the entry of summary judgment in favor of the defendant pesticide manufacturer given the fact that plaintiffs' experts had been excluded. The court found that "because sufficient evidence of causation was lacking without expert testimony, the grant of summary judgment was appropriate." *Id*. at 1297.

Similarly, in *Guinn v. AstraZeneca Pharmaceuticals, LP*, 602 F.3d 1245 (11th Cir. 2010), plaintiff sued defendant pharmaceutical manufacturer alleging that the defendant's prescription drug Seroquel caused her to gain weight and develop diabetes. *Id*. at 1248. Plaintiff offered a medical expert on the issue of causation. The trial court, however, found the expert's differential diagnosis methodology to be incomplete and unreliable and excluded the expert on *Daubert* grounds. *Id*. at 1251-1252. The trial court entered summary judgment in favor of the defendant, finding "plaintiff has no other expert on which she can rely to establish specific causation, and this type of proof requires expert testimony." *Id.* at 1252.

The Eleventh Circuit affirmed the court's entry of summary judgment in

favor of defendant AstraZeneca. It agreed that the differential diagnosis offered by plaintiff's sole expert was properly excluded, and therefore without expert evidence plaintiff could not establish causation:

> On appeal, [plaintiff] has identified no evidence of specific causation other than Dr. Marks' testimony. The district court therefore did not err by holding that the exclusion of Dr. Mark's testimony is a basis for granting summary judgment in favor of AstraZeneca.

*Id*. at 1256 (citations omitted.)

Likewise, in *Benkwith v. Matrixx Initiatives, Inc.*, 467 F. Supp. 2d 1316 (M.D. Ala. 2006), plaintiff brought an action against the manufacturer of an over-the-counter nasal spray (Zicam), claiming that she suffered a toxic reaction to one of its components, leading to a loss of her senses of smell and taste. *Id*. at 1319. In support of causation, plaintiff offered a medical expert with qualifications and experience in the fields of rhinology and otolaryngology. *Id*. at 1322. The court applied the *Daubert* analysis to the expert's testimony and determined it to be unreliable in a number of respects. *Id*. at 1332. It found that the expert improperly extrapolated animal studies to humans, drew impermissible conclusions from scientific articles, and failed to follow fundamental principles of epidemiology, among other things. *Id*.

As a result of exclusion of plaintiff's expert on *Daubert* grounds, the court in *Benkwith* entered summary judgment in favor of the pharmaceutical manufacturer.

15

It recognized that proof of causation in a toxic tort case requires competent expert testimony, and that plaintiff could not prevail on her claims without that evidence:

> The exclusion of Dr. Jafek's report and testimony necessitates granting Defendants' Motion for Summary Judgment. That motion was based on Defendants' contention that Dr. Jafek's report and testimony should be excluded. Without proof of causation, Plaintiff cannot prevail on any of her claims. *See McClain*, 401 F.3d at 1237 (proof of general and individual causation in toxic tort cases requires expert testimony.)

*Id. See also Allison v. McGhan Medical Corp.*, 184 F. 3d 1300 (11th Cir. 1999) (Summary judgment for defendant upheld where exclusion of expert testimony prevented plaintiff from establishing *prima face* case with regard to disease causation); *Haggerty v. UpJohn Co.*, 950 F. Supp. 1160 (S.D. Fl.) (summary judgment entered in favor of defendant on basis of lack of causation where plaintiff's pharmacologist expert's testimony excluded).

Expert testimony has similarly been required to establish general and specific causation in toxic tort maritime cases. *See Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 729 (5th Cir. 2009). In *Seaman,* plaintiff alleged that he developed bladder cancer as a result of chemical exposure while working as a ship captain on his former employer's vessels. *Id*. at 723. Having found that the expert evidence proffered by the seaman was inadmissible under the *Daubert* standard, the trial court excluded the expert testimony and granted summary judgment in

favor of defendant employer on the grounds that plaintiff failed to establish either general or specific causation. *Id*. at 724-26, 729.

The summary judgment grounds before the Court here are far more compelling than those presented in *Hendrix, McClain, Rink, Guinn*, *Beckwith* and *Seaman*. In those cases, the courts weighed the quality of the expert testimony proffered using the *Daubert* analysis and entered summary judgment regarding causation because the scientific evidence was found to be unreliable. Here, Mr. Townsend has proffered no scientific evidence at all supporting causation, so a *Daubert* determination is not even necessary.

## **CONCLUSION**

The law is clear in this area. A plaintiff pursuing a toxic tort claim must provide expert testimony on the issue of causation. Mr. Townsend has failed to do so and the time for his expert disclosure has expired. Accordingly, BP respectfully requests that summary judgment be entered in its favor.

>*/s/  William H. Morrow*
>One of the Attorneys for Defendants
>BP Exploration & Production Inc. and
>BP America Production Company

OF COUNSEL:

Harlan I. Prater, IV  hprater@lightfootlaw.com
William H. Morrow  wmorrow@lightfootlaw.com
Jonathan R. Little   jlittle@lightfootlaw.com
**LIGHTFOOT, FRANKLIN & WHITE, LLC**
400 20th Street North
Birmingham, AL 35203
Telephone: (205) 581-0700

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will notify all counsel of record.

I further certify that a true and correct copy will be served on the Plaintiff at the following addresses via electronic and U. S. Mail:

>Robert James Townsend
>306-C Valley Street
>Glencoe, Alabama 35905
>
>*Pro Se Plaintiff*

>/s/  William H. Morrow
>OF COUNSEL